UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

ERIC DERWIN HARRIS

VERSUS

COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION

CIVIL ACTION

NO. 16-749-EWD (Consent)

## RULING

Plaintiff, Eric Derwin Harris ("Plaintiff"), brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for supplemental security income ("SSI").[1] Plaintiff has filed a Memorandum in Support of Plaintiff's Appeal of the Commissioner's Denial of Social Security Benefits,[2] the Commissioner has filed an Opposition Memorandum,[3] and Plaintiff has filed a Reply.[4] Based on the applicable standard of review under § 405(g) and the analysis which follows, the court **AFFIRMS**[5] the Commissioner's decision and **DISMISSES** Plaintiff's appeal.

I.      **Procedural History**

Plaintiff filed an application for SSI on May 1, 2014 alleging disability beginning June 1,

---

[1] *See*, AR pp. 108-116. References to documents filed in this case are designated by "(R. Doc. [docket entry number(s)] p. [page number(s)]." References to the record of administrative proceedings filed in this case are designated by "(AR [page number(s)]."

[2] R. Doc. 8.

[3] R. Doc. 10.

[4] R. Doc. 11.

[5] The parties consented to proceed before the undersigned United States Magistrate Judge, R. Doc. 6, and on January 9, 2018, an Order of Reference was entered by the District Judge referring this matter to conduct "all further proceedings and the entry of *Judgment* in accordance with 28 USC 636(c)...." R. Doc. 12.

2013.[6]  Plaintiff's claim was initially denied on October 17, 2014.[7]  Thereafter Plaintiff requested

a hearing before an Administrative Law Judge ("ALJ").[8]  A hearing was held on August 6, 2015

at which Plaintiff, represented by counsel, testified.[9]  Thomas J. Meunier Jr., a vocational expert,

also testified at the hearing.

On September 25, 2015, the ALJ issued a notice of unfavorable decision.[10]  Thereafter,

Plaintiff requested review by the Appeals Council.[11]  On September 18, 2016, the Appeals Council

denied Plaintiff's request for review.[12]  On November 9, 2016, Plaintiff filed his Complaint.[13]

Accordingly, Plaintiff exhausted his administrative remedies before timely filing this action for

judicial review and the ALJ's decision is the Commissioner's final decision for purposes of judicial

review.[14]

## II.     Standard of Review

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying

disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record

---

[6] AR pp. 108-116.  A claimant applying to the SSI program cannot receive payment for any period of disability predating the month in which he applies for benefits, no matter how long he has actually been disabled.  *Brown v. Apfel*, 192 F.3d 492, 495 n. 1 (5th Cir. 1999); 20 C.F.R. § 416.335.  "Thus, the month following an application fixes the earliest date from which SSI benefits can be paid."  *Clarke v. Astrue*, 2013 WL 105017, at * 4 (S.D. Tex. Jan. 8, 2013).

[7] AR pp. 27-38.

[8] AR pp. 68-69.

[9] AR pp. 10-25.

[10] AR pp. 43-55.

[11] AR p. 6.

[12] AR pp. 1-4.

[13] R. Doc. 1.

[14] *See*, 20 C.F.R. § 404.981 ("The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision.  The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised.  You may file an action in a Federal district court within 60 days after the date you receive notice of the Appeals Council's action.").

as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). If the Commissioner fails to apply the correct legal standards, or provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981); *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981); *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III.    The ALJ's Decision

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the ALJ to apply a five-step sequential evaluation to each claim for benefits. 20 C.F.R. §§ 404.1520; 416.920. In the five-step sequence used to evaluate claims the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe medically determinable impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in Appendix 1 of the regulations; (4) the impairment(s) prevents the claimant from performing past relevant work; and, (5) the impairment(s) prevents the claimant from doing any other work. *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002).

The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity ("RFC"), age, education and past work

experience, that he or she is capable of performing other work.  20 C.F.R § 404.1520(g)(1).  If the

Commissioner proves other work exists which the claimant can perform, the claimant is given the

chance to prove that he or she cannot, in fact, perform that work.  *Muse*, 925 F.2d at 789.

Here, the ALJ made the following determinations:[15]

1. Plaintiff had not engaged in substantial gainful activity since his application date of May 1, 2014;

2. Plaintiff had the following severe impairments: major depressive disorder, hypertension, hypothyroidism, obesity, and congestive heart failure;

3. Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

4. Plaintiff had the residual functional capacity ("RFC") "to perform light work as defined in 20 CFR 416.967(b) except the claimant can do work of a simple and routine nature with no public interaction and occasional interaction with coworkers;"[16]

5. Plaintiff's past relevant work was unskilled and Plaintiff was unable to perform any past relevant work;

6. Plaintiff was considered a younger individual as defined by the regulations on the date his application was filed, has at least a high school education, and was able to communicate in English; and

7. "Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers[17] in the national economy that claimant can perform"[18] such that Plaintiff was not disabled since the May 1, 2014 application date.

## IV.    Plaintiff's Allegations of Error

Plaintiff asserts three allegations of error.  First, Plaintiff contends that the ALJ failed to

properly assess his mental RFC.[19]  Second, Plaintiff argues that the ALJ erred in finding that

---

[15] AR pp. 45-55.

[16] AR p. 49.

[17] The ALJ found that the Plaintiff had the ability to perform work in the following representative occupations: janitorial, housekeeping cleaner and cafeteria attendant.  AR pp. 54-55.

[18] AR p. 54.

[19] AR pp. 4-9.

Plaintiff's "end stage" renal disease/kidney disease was a non-severe impairment.[20]   Finally,

Plaintiff argues that the ALJ failed to give adequate weight to the opinion of Dr. Franklin Harris,

whom Plaintiff characterizes as his treating psychiatrist.[21]   The undersigned analyzes Plaintiff's

arguments regarding the ALJ's step two error (*i.e.*, the determination that Plaintiff's end stage

renal disease ("ESRD") was non-severe) first.   Because Plaintiff's argument regarding the weight

afforded to Dr. Harris' opinion is potentially relevant to Plaintiff's mental RFC, the undersigned

considers that argument second.

## V.   Law and Analysis

### A. Substantial Evidence Supports a Finding that Plaintiff's Alleged End Stage Renal Disease is Non-Severe

Plaintiff argues that the ALJ erred in finding his ESRD to be a non-severe impairment.   In

her Ruling, the ALJ explained her finding with respect to ESRD as follows:

> The undersigned finds the alleged end stage renal disease/kidney disease to be a non-severe impairment.   Although established by the medical evidence of record in the form of diagnosis and treatment, there is no linkage in the documentary evidence between renal/kidney disease and any significant work-related limitation for at least twelve months.   The claimant's treatment for this condition is very sporadic and there appears to be no treatment for this condition since 2014.   (IF, 12F) As such, the noted history of end stage renal disease/kidney disease is non-severe for the purposes of this Decision.[22]

Plaintiff contends that the "designation of end-stage renal disease as 'non-severe' is error on its

face" because "[a] cursory review of the medical literature very clearly illustrates that this

condition generally does not become apparent until one's kidney function is significantly

---

[20] AR pp. 9-11.

[21] AR pp. 11-14.  Plaintiff's Memorandum in Support of Appeal identifies this psychiatrist as "Dr. Franklin Davis" as well as Dr. Harris.  A review of Plaintiff's briefing as well as the records cited therein shows that Plaintiff is referring to Dr. Franklin Gregory Harris.  *See also*, AR p. 494.

[22] AR p. 46.

impaired."[23]  Plaintiff further argues that ESRD is not reversible and "indicates the end of effective treatment, except for dialysis or kidney transplant."[24]  Plaintiff contends that the ALJ improperly drew inferences from his failure to pursue regular medical treatment without "first considering the evidence of record which may explain claimant's irregular treatment or his failure to seek treatments"[25] and specifically avers that the ALJ failed to consider the fact that Plaintiff had recently moved from Texas to Louisiana, may not have had financial resources to obtain treatment, and may have been precluded from seeking medical treatment due to his mental impairment. Finally, Plaintiff complains that the ALJ failed to refer to or cite the Fifth Circuit's standard for determining an impairment is non-severe and "cited nothing in the medical record from which one might infer that claimant's renal failure/disease (end-stage) is a 'slight abnormality [having] such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'"[26]

As a threshold matter, the undersigned agrees that the ALJ failed to expressly cite the *Stone* standard in her Ruling. Under 20 C.F.R. §§ 404.1520(c), 419.920(c), an impairment or combination of impairments is considered "not severe" if claimant's physical or mental ability to do basic work activities is not "significantly limited." However, in *Stone*, the Fifth Circuit held that an impairment can be considered as "not severe" only if it is a "slight abnormality" having such a minimal effect on an individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.  *Stone v. Heckler*,

---

[23] R. Doc. 8, p. 9.

[24] R. Doc. 8, p. 10.

[25] R. Doc. 8, p. 10.

[26] R. Doc 8, p. 11.

752 F.2d 1099, 1101 (5th Cir. 1985). [27]  Although the *Stone* court stated that unless the correct standard was either set forth by reference or expressly stated in its opinion, it would assume the ALJ did not apply the correct standard, *Id*. at 1106, the Circuit subsequently held that an ALJ's failure to follow the standard set out in *Stone* does not automatically dictate remand unless the plaintiff was harmed by the error.  *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) ("While it is true that the ALJ never cited to *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir.1985), which provides the appropriate legal standard for determining the severity of the disability, procedural perfection is not required unless it affects the substantial rights of a party.") (citing *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)).  In finding the ALJ's failure to use the proper *Stone* standard to be harmless, the *Taylor* court explained that substantial evidence supported the finding of non-severity of the claimant's mental problems.  706 F.3d at 603 (explaining that a comprehensive medical exam revealed no evidence of the alleged mental health issues, medical records showed claimant was not taking any medication for mental health complaints, plaintiff failed to seek mental health care even after being twice referred at his own request and that "[t]he claimant must show that he is so functionally impaired by his mental impairment that he is precluded from engaging in substantial gainful activity.  He fails to do so, and any error by the ALJ in not following the procedures set out in *Stone* is harmless.  As such, remand is not required since there is no evidence in the record that Taylor's mental health claims are severe enough to prevent him from holding substantial gainful employment.") (internal citation omitted).

Here, the undersigned finds that any error in the ALJ's failure to cite the *Stone* standard

---

[27] While the standard set forth in the Ruling seems similar to that set out in *Stone*, it is not exactly the same.  In the Ruling, the ALJ stated that "[a]n impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual ability to work."  AR p. 44.  To the extent the standard applied by the ALJ in determining the severity of a disability differed from *Stone*, any such error is harmless given the lack of an ESRD diagnosis in the administrative record.

was harmless, because substantial evidence in the record supports the ALJ's determination that Plaintiff's alleged ESRD is non-severe.

Significantly, although the ALJ stated that ESRD was "established by the medical evidence of record in the form of diagnosis and treatment," a review of the administrative record does not support this factual statement.[28] The ALJ cites a March 17, 2014 discharge statement from "Family Practice MLK"[29] and a February 2, 2015 Our Lady of the Lake ("OLOL") emergency room visit summary.[30] The March 17, 2014 record indicates that the reason for the appointment was "severe hypothyroidism and rhabdomyolysis"[31] and comments contained in that record state "[h]omeless male with polysubstance abuse. Has severe hypothyroidism and HTN. He is morbid obese and will need sleep study as outpatient."[32] The record does not include any positive diagnosis of ESRD; instead, it appears that upon his discharge, Plaintiff was provided generalized medical literature regarding hypothyroidism, heart failure, and end stage kidney disease.[33] With respect to the February 2015 record from OLOL, Plaintiff presented to the emergency room

---

[28] Any error by the ALJ in finding the records supported a diagnosis and/or treatment of ESRD would also be harmless error which, if anything, would have tended to favor Plaintiff's claim of disability. Under the harmless error rule, a judgment will not be vacated unless the substantial rights of a party have been affected. Procedural perfection in administrative proceedings is not required and improprieties constitute a basis for remand only if they would cast into doubt the existence of substantial evidence to support the ALJ's decision. *Mays v. Bowen,* 837 F.2d 1362, 1364 (5th Cir.1988)*; Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

[29] AR pp. 213-224.

[30] AR pp. 382-442.

[31] Rhabdomyolysis is defined in Stedmans Medical Dictionary as "[a]n acute, fulminating, potentially fatal disease of skeletal muscle that entails destruction of muscle...." Stedmans Medical Dictionary 781430. *See also*, Merriam-Webster Online, http://www.merriam-webster.com/dictionary/rhabdomyolysis (last visited January 29, 2018) (defining rhabdomyolysis "the destruction or degeneration of muscle tissue (as from traumatic injury, excessive exertion, or stroke) accompanied by the release of breakdown products into the bloodstream and sometimes leading to acute renal failure." While this condition can cause kidney failure, the reference to rhabdomyolysis in the medical record is not a diagnosis of ESRD, nor does the record indicate Plaintiff was treated for ESRD.

[32] AR p. 214.

[33] AR pp. 217-224

complaining of increased generalized swelling and seeking medication refills.[34]   Plaintiff self-reported a history of chronic heart failure, ESRD, hypothyroidism, and depression[35] and was ultimately diagnosed with myxedema[36] and counseled regarding the inappropriateness of using the emergency room to obtain medication refills.[37]   The OLOL record does not contain a diagnosis of ERSD.[38]  Moreover, and contrary to Plaintiff's argument that ESRD "indicates the end of effective treatment, except for dialysis or kidney transplant," the OLOL record notes that Plaintiff "is not

---

[34] AR p. 416.

[35] AR pp. 416 & 428.

[36] Myxedema is a term sometimes used synonymously with severe hypothyroidism.   *See*, Stedmans Medical Dictionary 586410 (defining myxedema as "[h]ypothyroidism characterized by a relatively hard edema of subcutaneous tissue, with increased content of mucins (proteoglycans) in the interstitial fluid; characterized by somnolence, slow mentation, dryness and loss of hair, increased fluid in body cavities such as the pericardial sac, subnormal temperature, hoarseness, muscle weakness, and slow return of a muscle to the neutral position after a tendon jerk; usually caused by removal or loss of functioning thyroid tissue."); Merriam-Webster Online, http://www.merriam-webster.com/dictionary/myxedema (last visited January 29, 2018) (defining myxedema as "severe hypothyroidism characterized by firm inelastic edema, dry skin and hair, and loss of mental and physical vigor.").

[37] AR p. 420.  Plaintiff also complains that the ALJ failed to consider Plaintiff's ability to afford his medications. There is no indication in the record that Plaintiff was unable to afford his medications.  Per the OLOL emergency room note, Plaintiff was "given resources for indigent care in BR" and reported that "he is in the process of obtaining Medicaid."  AR p. 420.  Plaintiff has presented no evidence to support a finding that he is unable to pay for his medications.  *See*, *Tamez v. Sullivan*, 888 F.3d 334, 336 (5th Cir. 1989) (finding that single disability report referencing that claimant did not have money to fill a prescription was insufficient to establish disability based on an inability to pay for treatment); *Tate v. Colvin*, Civil Action No. 13-6552, 2014 WL 4982662, at * 18 (E.D. La. Oct. 6, 2014) ("When '[t]he record contains no further mention of [plaintiff's] ability to pay for ... treatment,' there is 'no reason to conclude that [she] is unable to afford the prescribed treatment ... simply on the ground that [s]he was unable to pay for a prescription' on a single occasion…") (citing *Tamez*, 888 F.3d at 336); *Martinez v. Astrue*, No. 7:09-cv-125, 2010 WL 1946626, at * 3 (N.D. Tex. March 30, 2010) ("Plaintiff argues that the ALJ failed to properly consider his inability to pay for his medications; however, Plaintiff failed to meet his burden of proof on this issue, and has failed to present any evidence at all that he tried to obtain free or low-cost medication and was unsuccessful.").  Likewise, there is no indication in the administrative record that Plaintiff's mental condition, or his recent move from Texas, precluded his ability to obtain necessary treatment.  Of particular note, the mental health treatment notes from New Transitions in Louisiana indicate that Plaintiff regularly attended therapy sessions beginning in May, 2015.  AR pp. 496-502.

[38] At certain points in the OLOL record, there are notes regarding Plaintiff's past medical/family/social history.  These notes indicate that Plaintiff's report of ESRD was "confirmed."  *See*, AR pp. 417, 425, & 428.  It is not clear what is meant by "confirmed" and, as explained herein, the OLOL record does not include a positive diagnosis of ESRD and, contrary to Plaintiff's assertion that ESRD indicates the end of effective treatment with the exception of dialysis or kidney transplant, notes that Plaintiff was not on dialysis and was instead making his own urine.  AR p. 416.

on dialysis and he makes urine."[39]   These are the only medical records contained in the administrative record that even reference ESRD.

"The burden of proving the existence of a medically determinable impairment, part of the analysis at the second step, is on the Plaintiff." *Rowe v. Colvin*, Civil Action No. 16-204, 2017 WL 3821473, at * 8 (M.D. La. Aug. 31, 2017) (citing *Laurent v. Astrue*, 366 Fed. Appx. 559, 561 (5th Cir. 2010) ("The claimant carries the burden of proof in the first four steps of the analysis.")); *see also*, *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) ("The claimant has the burden of proving she has a medically determinable physical or mental impairment lasting at least twelve months that prevents her from engaging in substantial gainful activity.").   Here, the medical evidence does not include a diagnosis of ESRD, nor does it contain any records regarding treatment for such a condition.   Without showing a diagnosis of ESRD, it is difficult to understand how Plaintiff could establish that ESRD is a severe impairment in the first instance.   *See*, *Rowe*, 2017 WL 3821473, at * 12 ("substantial evidence supports the ALJ's finding that lupus is not a medically determinable impairment, and therefore, not a severe impairment.").   Although Plaintiff argues that ESRD is inherently a severe condition, there is no objective medical evidence that Plaintiff actually suffers from such condition.   Moreover, as the ALJ properly noted, Plaintiff has pointed to no evidence in the record, even assuming *arguendo* a proper diagnosis of ESRD had been made, that he suffers from any limitations to his ability to work stemming therefrom.   *See*, *Cagle v. Colvin*, Civil Action No. H-12-0296, 2013 WL 2105473, at * 5 (S.D. Tex. May 14, 2013) (explaining that although treatment records for depression and anxiety were found in claimant's record, "what is not in the record…is evidence that [claimant's] depression and anxiety have had

---

[39] AR p. 416.   The undersigned also notes that a June 2, 2015 record from Louisiana Cardiology Associates lists Plaintiff's "current diagnoses" as Hypertension- essential (benign); cardiomyopathy; heart failure systolic, chronic; palpitations; chest pain; and CHF.  AR p. 378.   "CHF" is a common abbreviation for congestive heart failure.

any affect [sic] on her ability to perform basic work activities."). Accordingly, the undersigned finds that substantial evidence supports the ALJ's finding that Plaintiff's purported ESRD was non-severe.

## B. The ALJ Afforded Appropriate Weight to the Mental RFC Questionnaire

Plaintiff also contends that the ALJ failed to give appropriate weight to a mental RFC questionnaire (the "Questionnaire")[40] presumably completed by Dr. Franklin Harris, whom Plaintiff contends is his treating psychiatrist. In her Ruling, the ALJ explained the weight afforded to this Questionnaire as follows:

> The record contains a mental residual functional capacity form dated August 4, 2015 (14F) which indicates an opinion that the claimant is seriously limited in carrying out detailed instructions and dealing with stress of a semi-skilled and skilled work level, using public transportation; is limited but satisfactory in adhering to basic standards of neatness and cleanliness; and is unable to meet competitive standards with understanding and remembering detailed instructions, interact appropriately with the general public, maintain socially appropriate behavior and travel in unfamiliar places (14F/4-6). Furthermore, the document indicates the claimant has no useful function in interacting appropriately with general public (14F/4-6). While it is unclear as who authored of [sic] this pre-printed form (i.e. appears to contain the signature of the claimant as well as a therapist), the opinion expressed is quite conclusory, providing very little explanation of the evidence relied on in forming that opinion. As such, the undersigned accords it little weight. Dr. Harris, the licensed psychiatrist or Doris Dawson, LPC at New Transitions, did not document positive objective clinical or diagnostic findings to support the functional assessment (15F).[41]

Generally, the "opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *see also* 20 C.F.R. §

---

[40] AR pp. 481-486.

[41] AR pp. 52-53.

404.1527(c)(1) (examining physician opinion given more weight than non-examining physician).[42] However, an ALJ may reject the treating source's opinion when "'there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another.'" *Walker v. Barnhart*, 158 Fed. Appx. 534, 535 (5th Cir. 2005) (quoting *Newton*, 209 F.3d at 458). Further, "the ALJ may give 'less weight, little weight, or even no weight' to the opinion of a treating physician upon a showing of good cause." *Ray v. Barnhart*, 163 Fed. Appx. 308, 313 (5th Cir. 2006) (quoting *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001)). In summary, an ALJ is free to discredit the opinion of a treating physician when it is contradicted by the evidence in the record. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) (ALJ may reject a treating physician's opinion in favor of an examining physician where the evidence supports a contrary conclusion). Where an ALJ has found a treating physician's opinion to be inconsistent with that physician's own treatment records and other evidence in the record, this court has affirmed the ALJ's rejection of that opinion. *See*, *Villar v. Colvin*, Civil Action No. 14-562, 2015 WL 7731400 (M.D. La. Oct. 8, 2015) (affirming ALJ's rejection of treating physician's opinion where physician's own notes and other notes in the record failed to support the physician's opinion); *Miller v. Colvin*, Civil Action No. 14-675, 2016 WL 1178391, at * 4

---

[42] For claims filed on or after March 27, 2017, the federal regulations provide:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

20 C.F.R. § 404.1520c. Because this claim was filed prior to March 27, 2017, the treating physician rule set forth in 20 C.F.R. § 404.1527 controls.

(M.D. La. Feb. 25, 2016) (affirming ALJ's decision to afford little weight to treating psychiatrist's Mental Medical Source Statement where Statement was unsupported by psychiatrist's own treatment notes).[43]

Under the regulations, a "treating source" is defined as a medical source that has or has had "an ongoing treatment relationship" such that the medical evidence shows that Plaintiff sees or has seen "the source with a frequency consistent with accepted medical practice for the type of treatment." 20 CFR § 404.1502. Opinions from treating sources are generally given more weight "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture" of a claimant's impairments. 20 CFR § 404.1527(c)(2). Where no such longitudinal pattern of care is shown, the Fifth Circuit has held that an ALJ is not required to give that professional's opinion greater weight. *See*, *Clayborne v. Astrue*, 260 Fed. Appx. 735, 737 (5th Cir. 2008) (doctor properly rejected as treating source where "isolated visits" did not amount to an "ongoing treatment relationship" with doctor); *Hernandez v. Heckler*, 704 F.2d 857, 860–61 (5th Cir. 1983) (doctor who only saw claimant twice in a 17–month period was not a treating physician); *Taylor v. Astrue*, 245 Fed. Appx. 387, 391 (5th Cir. 2007) ("[N]othing about Taylor's relationship with Dr. Weisberg establishes the 'longitudinal' pattern of care described in [the regulations]; Taylor's two visits to Dr. Weisberg, four years apart, are the sort of "individual

---

[43] To the extent Plaintiff contends that the ALJ was required to perform a detailed analysis of the Questionnaire under the criteria set forth in 20 C.F.R. § 404.1527(d)(2), R. Doc. 10, p. 6, the Fifth Circuit has explained that "*absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist*, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton v. Apfel*, 209 F.3d 448, 454 (5th Cir. 2000) (emphasis added). Based on the lack of treatment notes from Dr. Harris, the ALJ was not required to specifically analyze the 20 C.F.R. § 404.1527(d)(2) criteria. *Holifield v. Astrue*, 402 Fed. Appx. 24, 27 (5th Cir. 2010) ("This court has interpreted 20 C.F.R. § 404.1527(d)(2) to mean that, 'absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2).' Since the record is replete with reliable medical evidence controverting Dr. Purser's opinions, the ALJ had no obligation to perform a detailed analysis before rejecting his opinions.") (citing *Newton*).

examinations" that are distinguished ... from the continuous care provided by a treating physician."). *See also*, *Siewert v. Colvin*, Civil Action No. 15-476, 2016 WL 7478968, at * 6 (M.D. La. Dec. 29, 2016) ("The sporadic nature of Dr. Sigrist's treatment, alone, was an appropriate basis on which the ALJ could discount his opinion.") (citing, *Sullivan v. Commissioner of Social Security*, 595 Fed. Appx. 502, 507 (6th Cir. 2014) (ALJ properly discounted physician's opinion as claimant's "treating relationship with [the doctor] was sporadic."); *Cookson v. Colvin*, 111 F.Supp.3d 142, 152 (D.R.I. 2015) (ALJ properly rejected physician's opinion based on doctor's infrequent treatment)). Here, there is only one treatment note from Dr. Harris.[44] That record indicates that Plaintiff saw Dr. Harris once, on May 5, 2015 as a "new client."[45] The "outpatient medication management form" completed by Dr. Harris at that time notes that Plaintiff admitted to "isolation behavior" and that Plaintiff was "unable to work due to health problems."[46] It is unclear whether this conclusory statement was Dr. Harris' opinion or something self-reported by Plaintiff. More importantly, and notwithstanding anything contained in the May 2015 record, Plaintiff's medical records include *only* this record from Dr. Harris. As such, there is no longitudinal pattern of care that would require the ALJ to afford weight to Dr. Harris' opinion as a treating physician. Accordingly, the undersigned finds that Dr. Harris is not properly considered a treating physician under the regulations such that his opinion is not entitled to any greater weight.

Moreover, even assuming Dr. Harris could be considered a treating physician and the Questionnaire expressed his opinion regarding Plaintiff's mental capabilities, there is substantial evidence in the record that contradicts the Questionnaire upon which Plaintiff relies. Plaintiff argues that the Questionnaire includes a diagnosis of persistent depressive disorder; notes

---

[44] AR p. 494.

[45] AR p. 494.

[46] AR P. 494.

medication side effects including dizziness, drowsiness, fatigue, lethargy, and stomach upset; notes Plaintiffs inability to meet competitive standards in understanding and remembering detailed instructions and serious limitations in carrying out detailed instructions;[47] and identifies "signs and symptoms" including "pathologically inappropriate suspiciousness or hostility, difficulties thinking or concentrating, emotional withdrawal, and decreased energy.[48] First, assuming this Questionnaire was completed by Dr. Harris, Dr. Harris' single treatment note does not reflect (other than perhaps the conclusory statement that Plaintiff is unable to work due to health problems) the level of disability reflected in the Questionnaire.[49] Second, other mental health treatment records contradict the level of disability set forth in the Questionnaire. The majority of mental health treatment notes from MHMRA reflect that Plaintiff was primary receiving care for

---

[47] During the hearing, the ALJ asked the vocational expert ("VE") to identify and classify Plaintiff's past work. The VE classified all of Plaintiff's past work as unskilled, and the ALJ proceeded to ask the VE to assume that same vocational history in his hypothetical questions. The VE further testified that while Plaintiff would be unable to return to his past work, there were other light, unskilled jobs available. AR pp. 23-24. In her Ruling, the ALJ ultimately found that, based on Plaintiff's RFC, there were jobs classified as light and unskilled which were available in the national economy and which Plaintiff could perform. AR pp. 54-55. The Questionnaire relied on by Plaintiff includes "check the box" portions meant to indicate Plaintiff's mental abilities and aptitudes needed to do unskilled (section I boxes) or semiskilled/skilled (section II boxes) work. AR pp. 484-485. Only the boxes regarding semiskilled/skilled work have been completed. The boxes for unskilled work have been left blank.

[48] R. Doc. 8, citing AR pp. 482-486.

[49] To the extent they are legible, Dr. Harris' notes from the May 5, 2015 appointment regarding Plaintiff's condition are as follows: "Trouble over past year with isolation behavior, unable to work due to health problems, his mood [illegible] throughout lite, but worse [illegible]…unsure of irritability, appetite up, sleep poor, ongoing nightmares…" AR p. 494. Other notes from New Transitions only reflect therapy sessions with Doris Dawson, who is not a psychiatrist. Assuming such notes could be properly considered in the first instance, these therapy notes likewise do not reflect the level of disability set forth in the Questionnaire. *See*, AR p. 502 (May 28, 2015 initial therapy session with Ms. Dawson noting Plaintiff depressed and reported that he prefers social isolation); AR p. 501 (June 4, 2015 therapy session with Ms. Dawson noting "Eric reported having a fair week. He is still isolating himself and remains in his room most of the time when at home. He still feels his meds need to be adjusted so that he may be able to function more normally – not feel so depressed and wanting to be alone. Recommend he report his symptoms to Dr. Harris. He has retained a SS lawyer for the purpose of pursuing SSI and food stamps – I will help client as much as I can with this plan."); AR p. 500 (June 18, 2015 therapy session with Ms. Dawson noting she discussed Eric "doing something other than staying isolated in his room"); AR p. 499 (June 25, 2015 therapy note reporting Ms. Dawson and Plaintiff discussed concern that Plaintiff's father was getting tired of him staying at his home and "what kinds of contribution he could make to help his father feel more positive regarding being there"); AR p. 498 (July 2, 2015 therapy note); AR p. 497 (July 9, 2015 therapy note); AR 496 (July 16, 2015 therapy note (discussed continued depression and the power of positive thinking)). Significantly, in each of these therapy notes, Ms. Dawson noted Plaintiff exhibited an appropriate mood, actively participated, showed appropriate social behavior, and was oriented to person, place, and time.

his polysubstance abuse (which Plaintiff contends has since resolved) and anger management prior to his alleged disability onset date;[50] however, an April 9, 2013 MHMRA discharge summary (*i.e.* two months prior to Plaintiff's alleged onset date) records diagnoses of major depression, alcohol, cocaine, and cannabis abuse.[51]  Notes thereafter from MHMRA also reflect Plaintiff's depression; however, these notes also do not reflect the level of disability set forth in the Questionnaire.[52] Similarly, while the psychological consultative examination completed by Dr. Van Hook on October 6, 2014 includes a clinical impression of major depression, unspecified anxiety disorder, and a history of chemical dependence, Dr. Van Hook concluded that Plaintiff's ability to understand, remember and carry out instructions was intact, his ability to maintain attention and concentration for simple repetitive tasks was adequate, and he could adequately respond to supervision and interact with others.[53]

Finally, even assuming that the Questionnaire was otherwise appropriately supported by the other evidence in the record, it is not clear that the Questionnaire was even completed by Dr.

---

[50] *See*, AR pp. 248-376.  These records generally indicate that Plaintiff participated in multiple group therapy sessions for addiction issues.

[51] AR pp. 307-308.

[52] *See*, AR pp. 349-353 (June 16, 2013 MHMRA physician assessment including mental status exam ("MSE") reflecting Plaintiff was  unkempt but made good eye contact, cooperative, soft spoken, presented with a depressed mood, constricted affect, logical thought process, no delusions, was oriented to person, place, time, and situation, exhibited good attention span and concentration, but noted deficits in the area of immediate recall and recent and remote memory); AR pp. 343-346 (July 8, 2013 MHMRA Adult Psychiatric Assessment noting that "depression is 10 times better," "energy is good," and "paranoia is less" but noting impaired memory and that Plaintiff was easily distracted).  *See also*, AR pp. 309-313 (February 6, 2013 MHMRA Physician Assessment including MSE reporting Plaintiff presented as cleanly groomed and dressed, made good eye contact, was cooperative and polite, exhibited a normal rate tone and volume of speech, depressed mood, constricted affect, logical thought process, was alert and oriented to person, place, time, and situation, and had intact immediate recall and recent and remote memory); AR pp. 277-280 (MHMRA Medication Maintenance Notes including MSE indicting Plaintiff presented with a cooperative attitude, normal rate and rhythm of speech, depressed mood, constricted affect, logical thought process, goal directed associations, absent thought content, was oriented to person, place, time, situation and had intact immediate recall and recent and remote memory, good attention span and concentration).

[53] AR pp. 240-242.  While Dr. Van Hook did note Plaintiff exhibited some memory problems, and concluded that Plaintiff's ability to sustain effort and persist at a normal pace over the course of a routine 40-hour work week was mildly impaired from a psychological perspective by his depression and anxiety, these limitations, as discussed below, were adequately accounted for in Plaintiff's RFC.

Harris.[54]   The Questionnaire is written in the first person, indicating that it was completed by Plaintiff himself.[55]   Although the form is directed to Plaintiff's treatment provider,[56] it is signed by Plaintiff (with Dr. Harris' signature included below).   Further, therapy notes from New Transitions indicate that the form was provided to Ms. Dawson, rather than Dr. Harris, for completion.[57]

As set forth above, the ALJ accorded the Questionnaire "little weight."   Given the multiple issues with the Questionnaire discussed herein, the undersigned finds there was substantial evidence to support that conclusion, and that the ALJ did not err in refusing to afford the Questionnaire greater significance.   *See*, *Swan v. Colvin*, Civil Action No. 15-60, 2016 WL 5429669, at * 13 (M.D. La. Aug. 30, 2016) ("The Court finds it unnecessary to determine whether Dr. Morrison is a 'treating physician' because Dr. Morrison's November 26, 2013 Medical Source Statement is inconsistent with her treatment records and would not be entitled to substantial weight even if Dr. Morrison is a 'treating physician.'   The Fifth Circuit has held that an ALJ may give

---

[54] Plaintiff avers that if there was a question regarding the legitimacy or authenticity of the Questionnaire, the ALJ had a duty to re-contact the physician for clarification. R. Doc. 8, p. 13.   "To determine whether the ALJ fully and fairly developed the record, we ask whether the record contained sufficient evidence for him to make an informed decision.   So long as such evidence exists, the ALJ need not have supplemented the record with additional evidence." *Hernandez v. Astrue*, 269 Fed. Appx 511, 515 (5th Cir. 2008) (citing 20 C.F.R. § § 404.1516, 416.916; *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir.1996); *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989)).   Here, because the court finds substantial evidence supported the ALJ's determination, it was not necessary for the ALJ to have supplemented the record.   Further, "reversible error or an ALJ's failure to develop the record requires a showing of prejudice." *Ybarra v. Colvin*, No. 4:13-CV-3720, 2015 WL 222330, at * 8 (S.D. Tex. Jan. 14, 2015) (citing *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000)).   Plaintiff must establish that the ALJ's alleged error casts into doubt the existence of substantial evidence to support the ALJ's decision.   *See*, *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).   Courts have explained that in order to show such prejudice, the Plaintiff must point "to evidence that would have been adduced and that could have changed the result." *Brock v. Charter*, 84 F.3d 726, 729 n. 1 (5th Cir. 1996).   Plaintiff has pointed to no such evidence.

[55] AR pp. 485 ("social anxiety around people I can hide it but I'm comfortable being isolated.   I live another life in my head to denial [sic] reality."); AR p. 486 ("living another life in my head because I hate this life.   Physical health problem, thyroid, short breath, my mind goes blank and I can't think.").

[56] AR p. 482 ("Please answer the following questions concerning your patient's impairments.").

[57] AR p. 497 (July 9, 2015 therapy note wherein Ms. Dawson notes "Eric is still expressing apprehension re: his SSI appeal.   He handed a form from his lawyer for me to complete and return to his lawyer.").

less weight to a treating physician's opinion when good cause is shown, as is the case when his statement as to disability is so brief and conclusory that it lacks strong persuasive weight, is not supported by medically acceptable clinical laboratory diagnostic techniques, *or is otherwise unsupported by the evidence*.") (citing *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)) (emphasis added by *Swan* court).

### A. The ALJ Properly Evaluated Plaintiff's Mental RFC

Plaintiff argues that the ALJ failed to properly assess his mental RFC and that, as a result, the RFC applied by the ALJ was not supported by substantial evidence. As stated above, the ALJ found that Plaintiff had a RFC "to perform light work…except the claimant can do work of a simple and routine nature with no public interaction and occasional interaction with coworkers."[58] For the reasons set forth herein, the undersigned finds that substantial evidence supports this RFC.

### 1. The ALJ Appropriately Considered Work Related Mental Functions When Developing Plaintiffs' RFC

First, Plaintiff contends that the ALJ failed to conduct a more detailed assessment of Plaintiff's work related mental capacities and limitations when developing Plaintiff's RFC, and instead relied solely on her category B assessments made earlier in the ALJ's analysis (which considered the severity of Plaintiff's mental impairment in order to determine whether that impairment met or medically equaled Listing § 12.04, 20 C.F.R., pt. 404, subpt. P, appx. 1).[59]

At step two of the five step sequential analysis, the ALJ considered whether Plaintiff's mental impairment met or medically equaled the criteria for Listing § 12.04, 20 C.F.R., pt. 404, subpt. P, appx. 1 ("Listing § 12.04"). Listing § 12.04 sets forth the requirements for a finding of presumptive disability based on depressive, bipolar, or related disorders. To meet the requirements

---

[58] AR p. 49.

[59] R. Doc. 8, pp. 4-6.

of Listing § 12.04, a claimant must show, in addition to certain medically documented findings set forth in subsection A, either that the "category B" or "category C" criteria are met. Category B criteria require the ALJ to consider a claimant's level of restriction in the areas of (1) daily living; (2) maintaining social functioning; (3) maintaining concentration, persistence, and pace; and (4) episodes of decompensation. Plaintiff contends that, in considering Plaintiff's mental RFC in conjunction with steps 4 and 5 of the sequential analysis, the ALJ inappropriately relied on her assessment of category B criteria rather than making a more detailed, function by function assessment of Plaintiff's mental capacities as required by SSR 96-8p.[60] Plaintiff argues that if this function by function analysis had been completed, "[s]uch other substantial evidence, not apparent in her paragraph B and C assessments, may have included plaintiff's paranoid thinking or inappropriate suspiciousness, emotional withdrawal or isolation, perceptual or thinking disturbances, decreased energy and persistent disturbances of mood and/or affect."[61]

"The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments…." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, * 4. "The functions that the ALJ considers are the claimant's ability to: 1) understand, carry out, and remember instructions; 2) use judgment in making work-related decisions; 3) respond appropriately to

---

[60] *See*, R. Doc. 8, p. 5 ("Specifically, the regulations call for a more detailed mental assessment at Steps 4 and 5 and in the formulation of the mental RFC. As stated in the regulation, '[a]n assessment of…RFC complements [Emphasis added] the functional evaluation necessary for paragraphs B and C of the Listing by requiring consideration of an expanded [Emphasis added] list of work-related capacities that may be affected by mental disorders…'").

[61] R. Doc. 8, p. 6. As discussed above, to the extent Plaintiff relies on the Questionnaire purportedly completed by Dr. Harris to support these mental limitations, the undersigned finds that the ALJ appropriately discounted the findings in that Questionnaire. To the extent Plaintiff contends that his other mental health records or hearing testimony support additional mental limitations, the undersigned finds that substantial evidence supports the mental RFC set out by the ALJ and that Plaintiff has not pointed to additional evidence in the administrative record substantiating additional limitations.

supervision, coworkers, and work situations; and 4) deal with changes in a routine work setting."

*Calvert v. Colvin*, 14-cv-404, 2016 WL 3906821, at * 6 (W.D. Tex. July 14, 2016) (citing SSR 96-8p and 20 C.F.R. § 404.1545(c)).  Despite Plaintiff's position that the ALJ failed to make a more detailed assessment, the ALJ engaged in significant analysis of Plaintiff's mental RFC. Specifically, the ALJ considered Plaintiff's self-reporting,[62] Plaintiff's mental health treatment records from both MHMRA and New Transitions[63] and the opinion evidence of the consultative examiner, James Van Hook.[64]  As noted above, while Dr. Van Hook reported that Plaintiff had some memory trouble, was "mildly impaired" in his ability to sustain effort and persist at a normal pace and in his ability to respond to stress, Dr. Van Hook also concluded that Plaintiff's ability to understand, remember and carry out instructions was intact, his ability to maintain attention and concentration for simple repetitive tasks was adequate, and he could adequately respond to supervision and interact with others.[65]  In making her RFC determination, the ALJ explained that she afforded Dr. Van Hook's opinion "some weight."[66]  Additionally, the ALJ considered the opinion of the state agency psychological consultant, Don Johnson, who reported that Plaintiff "has a mild limitation with stress tolerance and a tendency to isolate himself and avoid people…can understand, remember and carry out instructions, maintain attention and

---

[62] In an Adult Function Report completed on June 12, 2014, Plaintiff reported that he could prepare sandwiches and frozen dinners daily, and was able to wash dishes and do laundry.  AR p. 155.  Plaintiff also reported that his conditions did not affect his ability to perform personal care tasks such as bathing, shaving, and using the toilet, although he did report that he needed reminders to take a bath.  AR pp. 154-155.  He further reported that he could follow written instructions well, but would have to ask someone 2 or 3 times regarding spoken instructions and had no problem getting along with authority figures.  AR pp. 158-159.  He reported that he did not handle stress or changes in routine well.  AR p. 159.

[63] Plaintiff commenced treatment at New Transitions in April of 2015.  AR 492.  Prior to that, Plaintiff received mental health treatment from Mental Health Mental Retardation Authority ("MHMRA") in Texas from December 2012 through October 2013.  There are no mental health treatment notes between November 2013 and April 2015.

[64] AR p. 52-53.

[65] AR pp. 240-242.

[66] AR p. 52.

concentration for at least two hours at a time, can interact with others on a superficial basis and adapt to routine changes in a work setting."[67]  The ALJ accorded "some weight" to Johnson's opinion, explaining that "claimant is more limited in social functioning."[68]  Accordingly, and contrary to Plaintiff's argument, the ALJ did more than simply rely on her previous category B findings when developing Plaintiff's mental RFC and specifically considered Plaintiff's ability to understand and remember instructions as well as to respond to supervisors and interact with others.[69]

### 2. Plaintiff's RFC Did Account for Moderate Limitations in Concentration, Persistence, and Pace

Plaintiff also argues that the ALJ's restriction of Plaintiff to "work of a simple and routine nature with no public interaction and occasional interaction with coworkers" did not adequately account for Plaintiff's "moderate" limitations in concentration, persistence, and pace.[70]  Plaintiff contends that "most appellate courts now recognize that restricting claimants to simple, routine tasks account <u>only</u> for the understanding of a task (cognitive function) which has little or nothing to do with one's ability to 'stay on task.'  It is the ability to 'stay on task' that is implicated in plaintiff's limitation in concentration, persistence or pace."[71]

---

[67] AR p. 52 (citing AR p. 35).

[68] AR p. 52.

[69] As noted above, Plaintiff complains that if the ALJ had appropriately developed his mental RFC, such RFC "may have included plaintiff's paranoid thinking or inappropriate suspiciousness, emotional withdrawal or isolation, perceptual or thinking disturbances, decreased energy and persistent disturbances of mood and/or affect."  R. Doc. 8, p. 6.  The undersigned notes that Plaintiff's RFC limits Plaintiff to "work of a simple and routine nature with no public interaction and occasional interaction with coworkers."  AR p. 49.  These limitations seem to encompass the additional limitations of "paranoid thinking or inappropriate suspiciousness, emotional withdrawal or isolation" Plaintiff asserts should have been considered.  Moreover, although given an opportunity to revise Plaintiff's limitations for purposes of hypothetical questions raised with the vocational expert, Plaintiff's counsel did not raise any additional mental limitations related to "perceptual or thinking disturbances, decreased energy and persistent disturbances of mood and/or affect," and does not specifically explain in his briefing how these purported limitations are inconsistent with Plaintiff's RFC.

[70] AR pp. 6-8.

[71] R. Doc. 8, p. 7.

Although Plaintiff relies on case law from other circuits,[72] the Fifth Circuit has held in an unpublished opinion that "restrictions to rare public interaction, low stress, and simple one- to two-step instructions reflect that the ALJ reasonably incorporated [claimant's] moderate concentration, persistence, and pace limitations…." *Bordelon v. Astrue*, 281 Fed. Appx. 418, 423 (5th Cir. 2008). "The bulk of district courts in this circuit have followed *Bordelon* and held that a RFC limited to simple work reasonably incorporates a moderate, or in some cases marked, limitation in concentration, persistence, or pace." *Jackson v. Astrue*, Civil Action No. 16-479, 2017 WL 3996437, at * 5 (M.D. La. Aug. 2, 2017) (citing, *inter alia*, *Herron v. Colvin*, 16-CA-425, 2017 WL 2615445, at * 8 (W.D. Tex. June 16, 2017) (hypothetical limiting an individual to "simple, routine tacks, SVP 3 level, or lower semi-skilled jobs, provided there is no need for changes in the routine work setting and no more than superficial contact with coworkers and the general public" adequately accounted for plaintiff's moderate limitations in concentration, persistence, or pace.); *Ledet v. Colvin*, Civil Action 15-4651, 2016 WL 3079026, at * 14-15 (E.D. La. May 3, 2016) (rejecting argument that ALJ's determination that plaintiff could perform work of a simple, routine nature with no public interactions and only occasional interactions with coworkers and supervisors failed to include the moderate limitations in concentration, persistence, and pace); *Adams v. Astrue*, Civil Action No. 07-1248, 2008 WL 2812835, at * 4 (W.D. La. June 30, 2008) ("A limitation to simple, repetitive, routine tasks adequately captures deficiencies in concentration, persistence or pace."). Accordingly, the undersigned finds that the ALJ's limitation of Plaintiff to

---

[72] Plaintiff relies on a number of cases from other circuits which are not controlling. *See*, *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015) (noting that "the ability to perform simple tasks differs from the ability to stay on task."); *Stewart v. Astrue*, 561 F.3d 679, 685 (7th Cir. 2009) (rejecting argument that moderate limitations in concentration, persistence, and pace were accounted for by restriction to simple, routine tasks that did not require constant interaction with coworkers or the general public). In *Winschel v. Commisioner of Social Security*, 631 F.3d 1176, 1180 (11th Cir. 2011), the court explained that "[o]ther circuits have also rejected the argument that an ALJ generally accounts for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." As explained herein, district courts in this Circuit have applied a different standard.

work of a simple and routine nature adequately accounted for Plaintiff's moderate limitations in concentration, persistence, and pace.

### 3. Substantial Evidence Supports the ALJ's Determination Regarding Plaintiff's Limitations in Social Functioning

Finally, Plaintiff argues that the ALJ's inclusion of "occasional interaction with coworkers" as set forth in the RFC is not supported by substantial evidence. Plaintiff argues that the ALJ determined that Plaintiff's difficulties in social functioning were moderate rather than marked based on Plaintiff's interactions with his father, and that this reliance was inappropriate because (1) the relationship between Plaintiff and his father was "family based" and therefore "obligatory" and (2) the relationship was problematic.[73]

In finding that Plaintiff had moderate difficulties in the area of social functioning, the ALJ explained that "the undersigned has rated the claimant's difficulties in social functioning as moderate; however, it should be noted that a marked level of limitation was not accorded given the claimant's admitted social contact with his father."[74] First, the undersigned notes that notwithstanding Plaintiff's "obligatory" and "problematic" relationship with his father, substantial evidence in the administrative record supports the ALJ's finding that Plaintiff has moderate, rather than marked,[75] difficulties in the area of social functioning. As noted above, in each of the therapy notes from New Transitions, Plaintiff was noted as exhibiting an appropriate mood, actively

---

[73] R. Doc. 8, p. 8.

[74] AR p. 47.

[75] Per the regulations, mental disorders at step two of the five step sequential analysis are evaluated on a five-point rating scale consisting of none, mild, moderate, marked, and extreme limitations. 20 C.F.R., pt. 404, subpt. P, appx. 1, § 12.00(F)(2)(a)-(e). A moderate limitation exists when a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R., pt. 404, subpt. P, appx. 1, § 12.00(F)(2)(c). A marked limitation exists when a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R., pt. 404, subpt. P, appx. 1, § 12.00(F)(2)(d).

participated, showed appropriate social behavior, and was oriented to person, place, and time.[76] Dr. Van Hook reported that Plaintiff made adequate eye contact during his consultative exam, was able to respond appropriately to supervision and interact appropriately with others.[77] In his Adult Function Report, Plaintiff stated he had no problems with authority figures and had never been fired for not getting along with others.[78] Although Plaintiff's preference for isolation is well documented in the record, the record does not support a more limited RFC with respect to Plaintiff's social interactions, especially because that RFC provides for no interaction with the public and only limited interaction with coworkers. Second, while the undersigned understands that there is some amount of "obligation" with respect to any familial relationship, Plaintiff's records do not reflect an extremely problematic relationship between Plaintiff and his father. It appears Plaintiff's father drove him to the August 6, 2015 hearing, as well as the consultative examination with Dr. Van Hook.[79] During neither the hearing nor his appointment with Dr. Van Hook were any issues with Plaintiff's father reported. Likewise, treatment notes from Plaintiff's therapy sessions at New Transitions do not reflect significant difficulties between Plaintiff and his father.[80] Accordingly, the undersigned finds that substantial evidence supports the ALJ's

---

[76] AR pp. 496-502.

[77] AR pp. 241-242.

[78] AR pp. 158-159.

[79] *See*, AR p. 17; AR p. 240.

[80] Plaintiff and his father submitted letters following Plaintiff's consultation with Dr. Van Hook. *See*, AR pp. 246-247. In his letter, Plaintiff stated that he had been living with his father but was staying isolated in his room and that "we don't get alone [sic] I always think he talking about me." AR p. 246. In his letter, Plaintiff's father explained that he was a widower, and that taking care of Plaintiff was "too stressful." AR p. 247. Plaintiff's father additionally stated that he believed Plaintiff needed to be in a "professional group home." AR p. 247. Thereafter, during a June 25, 2015 session, Plaintiff discussed "what kinds of contributions [Plaintiff] could make to help his father feel more positive regarding being there…." AR p. 499. This note and the letters following Plaintiff's consultation with Dr. van Hook indicate that Plaintiff perceived some frustration from his father. However, the June 25, 2015 note also indicates that Plaintiff was seeking ways to improve that relationship and contribute to the household. As discussed above, despite these expressed frustrations and concerns with respect to Plaintiff's relationship with his father, other evidence in the administrative record provides support for the ALJ's determination that Plaintiff had moderate, rather than marked, limitations in the area of social functioning.

determination that Plaintiff had moderate rather than marked limitations in the area of social functioning and further finds that the RFC developed by the ALJ adequately accounts for the mental limitations established in the administrative record.[81]

## VI.    Conclusion

The analysis above demonstrates that Plaintiff's claims of reversible error are without merit.  The record considered as a whole supports the finding that the ALJ applied the proper legal standards and substantial evidence supports the determination that Plaintiff was not disabled.  Accordingly, under sentence four of 42 U.S.C. § 405(g), the final decision of the Commissioner of the Social Security Administration denying the applications for disability insurance benefits and supplemental security income filed by plaintiff, Eric Derwin Harris, is AFFIRMED and this action is DISMISSED.

Signed in Baton Rouge, Louisiana, on January 30, 2018.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[81] Even assuming, *arguendo*, that Plaintiff suffered from marked, rather than moderate, limitations in the area of social functioning, other courts have found that limiting a claimant to occasional interaction with coworkers adequately accounts for that marked limitation.  *See, e.g.*, *Schulte v. Colvin*, No. 4:13-cv-01521, 2014 WL 1654129, at *5 (N.D. Ohio April 24, 2014); *Barker v. Colvin*, Civil Action No. 13-2156, 2014 WL 2832753, at *9 (D. Col. June 23, 2014).